UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

YOLANDA PEATROSS,

     Plaintiff,

v.

LIBERTY MUTUAL PERSONAL
INSURANCE COMPANY,

     Defendant.

Case No. 20-10919

Honorable Laurie J. Michelson

---

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT [24] AND DENYING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT [26]**

---

This is an insurance coverage dispute. Yolanda Peatross purchased a home in 2019 and immediately applied for homeowner's insurance with Liberty Mutual Personal Insurance Company. While applying over the phone, she told Liberty's sales representative that "to [her] knowledge," the property taxes were current. However, unbeknownst to Peatross, the seller had not paid the property taxes for the last three years. Relying on Peatross' statement about the property taxes, Liberty issued a policy to her.

Tragically, Peatross' home caught fire a few months later. During its subsequent investigation, Liberty discovered the delinquent taxes, refunded Peatross' premium, and rescinded the policy from its inception, all while refusing to pay for the fire damage.

Peatross then brought suit for breach of contract and an accounting. The parties have since filed cross-motions for summary judgment.

Liberty relies on well-established Michigan law that a material misrepresentation in an insurance application, if relied on by an insurer, allows the insurer to rescind the policy. Peatross, on the other hand, relies on a somewhat novel interpretation of the Essential Insurance Act. She claims that she was an "eligible person for insurance," and so Liberty was required to insure her regardless of the status of the property taxes. Therefore, she says Liberty was forbidden from relying on the alleged misrepresentation and from rescinding the policy. The Court rejects her strained construction of the Act and DENIES her motion for summary judgment. And, for the reasons given below, it GRANTS Liberty's motion for summary judgment.

## I. Background

Peatross and Liberty largely agree on the factual record and the applicable law, except where otherwise noted.

### A. Factual Summary

In May 2019, Peatross purchased a home on Santa Rosa Drive in Detroit, Michigan by quitclaim deed, meaning the seller made no warranties about the title. (ECF No. 26, PageID.861; ECF No. 26-2); *see also* 7 Mich. Civ. Jur. Deeds of Conveyance § 6.

About a week prior to the purchase, Peatross had met with the seller, who told her that "everything [with the property] was up to date and everything was up to

code." (ECF No. 24-8, PageID.353–354.) Though Peatross took this to mean that the property taxes were current, she did nothing to verify that assumption. (*Id.* at PageID.354–355.) In truth, the seller had not paid property taxes in 2016, 2017, or 2018. (ECF No. 24, PageID.234.)

On the same day that she purchased the property, Peatross applied for homeowner's insurance over the phone with Liberty. (ECF No. 26, PageID.861.) The sales representative asked Peatross a series of questions, including whether the property taxes were current. (ECF No. 24, PageID.228.) Peatross replied, "to my knowledge, they are."[1] (ECF No. 26, PageID.861.) The sales representative then checked the box indicating that the taxes were current. (ECF No. 26-6, PageID.929.) Had she said the taxes were delinquent, the representative would have then asked: "have the real property taxes on this dwelling been delinquent for two or more years?" (*See id.*) And had she told the representative that the property taxes for 2016, 2017, and 2018 were delinquent, Liberty would have rejected her application. (ECF No. 24, PageID.229.)

Following her telephonic application for insurance, Liberty emailed Peatross two documents: "Your Home Insurance Application" and the "Michigan Property Supplemental Application." (*Id.*) Your Home Insurance Application included a fraud

---

[1] The briefing is somewhat inconsistent regarding the exact formulation of this question. (*See, e.g.,* ECF No. 24-8, PageID.378 (Peatross answering in a deposition: "What he asked me was are the taxes up to date on this property? My answer was, to my knowledge, they are"); *but cf.* ECF No. 26-6, PageID.929 (Michigan Supplemental Form asking, "At this time, are the real property taxes on the dwelling to be insured delinquent?" and box is checked for "No.").) Regardless, there is no dispute that Peatross' answer implied that the taxes were current.

statement that read: "In the event that any material misrepresentations . . . are made by . . . the insured during the application process, we may exercise whatever legal remedies . . . [are] available to us under the laws and regulations of this state." (ECF No. 24-5, PageID.324.) It also had a term above the signature line that read: "I have . . . validated information on all pages of the application." (*Id.*) Peatross electronically signed the document. (ECF No. 33, PageID.138.)

The parties dispute what documents Peatross received regarding the Michigan Property Supplemental Application, which included the property tax questions. Liberty says it sent Peatross the entire form, including the property tax questions and answers. (ECF No. 30, PageID.1135; ECF No. 24-11 (deposition of Jason Shattuck of OneSpan Sign, Liberty's electronic signature vendor).) Peatross, however, claims that "she did not receive the page with the question about taxes and [the sales representative's] answer," and instead received only the signature page. (ECF No. 31, PageID.1173.) Regardless, it is not disputed that Peatross received, signed, and returned the Michigan Property Supplemental Application signature page, and that it included the following term: "I can confirm that the facts stated in my application are true . . . [and] I understand that misrepresentation of information in my application could void some or all of my coverage." (ECF No. 26, PageID.862 ("She electronically signed both [documents] and emailed them to the agent."); ECF No. 26-6, PageID.930.) Liberty then issued her a policy. (ECF No. 24, PageID.232.)

Tragically, on December 27, 2019, Peatross' home caught fire. (ECF No. 26, PageID.862.) There are no allegations that she was in any way responsible. (*See* ECF No. 24-8, PageID.394.)

Liberty investigated the loss and soon discovered the delinquent property taxes. (ECF No. 24, PageID.233.) So in February 2020, they sent Peatross a letter refunding her premium and rescinding the policy back to its inception date. (*Id.* at PageID.235.) Liberty explained that it did so "because of what is believed to be material misrepresentations on your application . . . Specifically, . . . You indicated that the real property taxes on the insured property were not delinquent. Our investigation has revealed that [they were] . . . Had we known . . . we would not have issued this policy." (ECF No. 24-7, PageID.331.)

### B. Procedural History

In April 2020, Peatross filed this diversity action against Liberty Mutual Insurance Company (a different entity), claiming that it breached the insurance contract (Count I) and seeking an appraisal for the cash value of the fire loss per Michigan law (Count II). (ECF No. 1.) Shortly thereafter, she filed an amended complaint asserting the same claims against Liberty, the proper defendant. (ECF No. 4.)

Following discovery, the parties filed cross-motions for summary judgment. (ECF Nos. 24, 26.) The parties have provided substantial briefing that enables resolution of the motion without the need for further argument. *See* E.D. Mich. LR 7.1(f).

## II. Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. "A fact is material only if its resolution will affect the outcome of the lawsuit." *Hedrick v. Western Reserve Care Sys.*, 355 F.3d 444, 451–52 (6th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). And "a dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Scott v. First S. Nat'l Bank*, 936 F.3d 509, 516 (6th Cir. 2019) (internal citations omitted).

When, as here, there are cross-motions for summary judgment, the Court considers them separately, and it is not necessary that either party is entitled to summary judgment; it is possible that neither party meets its burden. *See Ohio State Univ. v. Redbubble, Inc.*, 989 F.3d 435, 442 (6th Cir. 2021). When considering Peatross' motion, the evidence is viewed in the light most favorable to Liberty and the initial (and ultimate) burden is on Peatross to show that she is entitled to judgment as a matter of law. *See id.* The opposite is true when considering Liberty's motion. *See id.*

## III. Discussion

As jurisdiction is premised on diversity of citizenship, the Court applies the law of the forum state. *See Auburn Sales, Inc. v. Cypros Trading & Shipping, Inc.*, 898 F.3d 710, 715 (6th Cir. 2018). So Michigan law governs here, as both parties acknowledge. (*See, e.g.,* ECF Nos. 24, 26.)

Peatross' policy with Liberty required her to "confirm that the facts stated in [her] application are true . . . [and that she] understand[s] that misrepresentation of information in [her] application could void some or all of [her] coverage." (ECF No. 26-6, PageID.930.) This is consistent with the "well-settled law of [Michigan] that where an insured makes a material misrepresentation in the application for insurance[,] . . . the insurer is entitled to rescind the policy and declare it void ab initio." *Lake States Ins. Co. v. Wilson*, 586 N.W.2d 113, 115 (Mich. Ct. App. 1998) (citing *Lash v. Allstate Ins. Co.*, 532 N.W.2d 869, 872 (Mich. Ct. App. 1995) (collecting cases)). A fact or representation in an application for insurance is material when communication of it would have resulted in an insurer rejecting the risk or charging an increased premium. *See Brooks v. U.S. Liberty Mut. Fire Ins. Co.*, No. 09-CV-10352, 2009 WL 5171728, at *5 (E.D. Mich. Dec. 30, 2009) (citing *Oade v. Jackson Nat'l Life Ins. Co. of Michigan*, 632 N.W.2d 126 (Mich. 2001)). And recission is justified even when the misrepresentation is innocent, so long as the insurer relied on it. *Lash*, 532 N.W.2d at 872; *see also Stevens v. Liberty Ins. Corp.*, No. 11-14695, 2012 WL 2408719, at *2 (E.D. Mich. June 26, 2012) (permitting insurer to rescind policy following an innocent misrepresentation about property taxes even when the "previous owner had promised to pay any outstanding taxes with the purchase money [plaintiff] paid for the property"). Finally, an insurer "has no duty to investigate or verify the representations of a potential insured." *Titan Ins. Co. v. Hyten*, 817 N.W.2d 562, 576 (Mich. 2012) (citing *Keys v. Pace*, 99 N.W.2d 547 (Mich. 1959)).

7

Accordingly, Liberty says that it was justified in rescinding the insurance contract with Peatross because she misrepresented the status of the delinquent property taxes, and because it relied on her misrepresentation when it issued the policy. (ECF No. 24, PageID.236.) But Peatross argues that she never actually made a false statement, and that Liberty was barred by the Essential Insurance Act from relying on the alleged misrepresentation in any case. *See* Mich. Comp. Laws § 500.2102 *et. seq.*; (ECF No. 26, PageID.875).

### A. Peatross' Misrepresentation

Liberty says that Peatross made a misrepresentation about the delinquent property taxes and that the misrepresentation was material. (ECF No. 24, PageID.238–242.) It cites several cases from this jurisdiction supporting that conclusion. *See, e.g., Carter v. Liberty Ins. Corp.*, No. 11-CV-14690, 2012 WL 5844653, at *5 (E.D. Mich. Nov. 19, 2012) ("Courts in this District have already determined that misrepresentations with regard to the status of property taxes [in an application for homeowner's insurance] are material.").

But Peatross argues that she did not make a misrepresentation to Liberty for two reasons. First, according to her, when she said "to her knowledge" the property taxes were current, that was true. (ECF No. 31, PageID.1172.) Specifically, she argues that her statement was qualified but accurate, and that it was the sales representative who made the misrepresentation: "The difference between Peatross' actual answer ('no, to the best of my knowledge') and [the sales representative's] answer ('no') was the difference between correct and incorrect." (*Id.* at PageID.1173.)

8

So, says Peatross, the "only arguably false statement was made to Liberty by its own employee[,] . . . not by Peatross." (*Id.* at PageID.1171.) Second, she says that she cannot be responsible for the misrepresentation because she only received the signature page for the Michigan Property Supplemental Application (which contained the question about property taxes), so she did not see the misrepresentation in that form before signing it. (*Id.* at PageID.1173.)

Neither argument is convincing. First, Peatross cannot pass the buck to the sales representative. As Liberty points out, her statement to the sales representative was a statement made to Liberty itself, so, essentially, Peatross is arguing that Liberty made a misrepresentation to Liberty, which makes little sense. (ECF No. 32, PageID.1378.) And Liberty was not interested in Peatross' best guess or her level of knowledge about the taxes. Liberty was interested in whether that taxes were current or delinquent. Indeed, it was Peatross who added the qualifier, "to my knowledge." And had Peatross been completely accurate about her level of knowledge, she would have instead said "I don't know," at which point Liberty would likely have asked her to check before issuing a policy. But her answer strongly implied that the taxes were current. And Liberty was permitted to take her at her word, as it was under no duty to investigate or verify her claims. *See Titan*, 817 N.W.2d at 576.

As for Peatross' argument that Liberty provided documents with missing pages, she signed both documents attesting to the application's truthfulness and was therefore under a duty to review the full application before submitting it. "[I]t has long been the law in this state that a party to a contract has a duty to examine the

9

contract and know what the party has signed." *Howard v. Farm Bureau Ins.*, No. 289407, 2009 WL 4985469, at *2 (Mich. Ct. App. Dec. 22, 2009). Indeed, several courts in Michigan have held insureds to contracts—so long as they signed the contract and affirmed that the information contained therein was correct—even when they claim that a sales representative made the misrepresentation or that they did not receive or read the full document. *See id.* (enforcing an insurance contract when plaintiff "indicated that he signed a page that he thought was merely a receipt and that the other pages of the application were not attached to the page he signed"); *Montgomery v. Fid. & Guar. Life Ins. Co.*, 713 N.W.2d 801, 804 (Mich. Ct. App. 2005) (enforcing an insurance contract when plaintiff asserted that the sales representative "is the one who actually completed the application and that . . . [she never] read the application before signing"); *Taybron v. Liberty Mut. Pers. Ins. Co.*, No. 20-10925, 2021 WL 4921256, at *3 (E.D. Mich. Oct. 21, 2021) (enforcing an insurance contract when plaintiff alleged "that she signed the application without seeing the pages that preceded her signature and assumed that [the sales representative] filled it out correctly"). In other words, "a contracting party has a duty to examine a contract and know what the party has signed, and the other contracting party cannot be made to suffer for neglect of that duty." *Howard*, 2009 WL 4985469, at *2.

So Peatross made a misrepresentation about the property taxes in her application for insurance, and the Sixth Circuit has already made clear that such misrepresentations, even if innocent, are material. *See Hatcher v. Nationwide Prop.*

10

& *Cas. Ins. Co.*, 610 F. App'x 507, 510 (6th Cir. 2015) ("[A]n omission in an insurance application about delinquent taxes would be material.").

### B. Liberty's Reliance

Liberty says it relied on Peatross' misrepresentation about the delinquent taxes because it would not have issued the policy had it known about them. (ECF No. 24, PageID.232.)

But Peatross argues that Liberty could not rely on her misrepresentation because, delinquent taxes or not, Liberty had to insure her under the Essential Insurance Act. (ECF No. 26, PageID.875.) Her argument proceeds in three steps. First, the Act says that: "an insurer shall not refuse to insure . . . an eligible person for home insurance, except in accordance with" certain provisions of the Act, including § 500.2103(2). *See* Mich. Comp. Laws § 500.2117. Second, § 500.2103(2) says: "'Eligible person', for home insurance, means a person who is the owner-occupant . . . [of] a house . . . . Eligible person does not include any of the following: . . . A person whose real property taxes with respect to the dwelling . . . to be insured have been and are delinquent for 2 or more years at the time of . . . application for[] home insurance." *See* Mich. Comp. Laws § 500.2103(2)(j). Third, says Peatross, she was an eligible person who Liberty could not decline to insure because "it was the former owner who racked up two years of delinquent taxes" and her taxes had only been "delinquent for 2 or more *hours* at the time of . . . application." (ECF No. 26, PageID.871.) In other words, Peatross says that even if she had been fully transparent about the delinquent taxes, Liberty would have been required by law to

insure her because she was an eligible person, as *her* taxes had not been delinquent for two or more years. And because she was an eligible person, Liberty could not rely on the misrepresentation and could not rescind the policy.

In fact, Peatross is so confident in this interpretation of § 500.2103(2)(j) that she claims that not only has Liberty been violating the Essential Insurance Act for "at least ten years" by "ask[ing] about the taxes on the property, without regard to the applicant," but she also claims that the Sixth Circuit and several other courts in this district have also been misinterpreting the Act for almost as long. (ECF No. 26, PageID.872, 881–884); *see, e.g., Hatcher v. Nationwide Prop. & Cas. Ins. Co.*, 610 F. App'x 507, 510 (6th Cir. 2015); *Nationwide Prop. & Cas. Ins. Co. v. Brown*, 260 F. Supp. 3d 864, 873 (E.D. Mich. 2017); *Carter v. Liberty Ins. Corp.*, No. 11-CV-14690, 2012 WL 5844653, at *6 (E.D. Mich. Nov. 19, 2012) (collecting cases); *Stevens v. Liberty Ins. Corp.*, No. 11-14695, 2012 WL 2408719, at *3 (E.D. Mich. June 26, 2012).

But this argument, too, is unconvincing for at least two reasons. First, the very same argument has already been rejected by another court in this district. *See Carter*, 2012 WL 5844653, at *4 (granting summary judgment for insurer even after plaintiff claimed that "if M.C.L. § 500.2103(2)(j) is read narrowly, it only applies to taxes that the homeowner actually accumulates when he or she owns the property").

Second, even assuming a blank slate, Peatross' interpretation of the statute is unpersuasive. "All matters of statutory interpretation begin with an examination of the language of the statute." *McQueer v. Perfect Fence Co.*, 917 N.W.2d 584, 589 (Mich. 2018). When interpreting statutes, Michigan courts are directed to "give effect

12

to every word, phrase, and clause in a statute and avoid an interpretation that would render any part of the statute surplusage or nugatory." *State Farm Fire & Cas. Co. v. Old Republic Ins. Co.*, 644 N.W.2d 715, 717 (Mich. 2002). "The primary rule of statutory construction is that, where the statutory language is clear and unambiguous, the statute must be applied as written." *McQueer*, 917 N.W.2d at 589 (quoting *Roberts v. Mecosta Co. Gen. Hosp.*, 642 N.W.2d 663 (Mich. 2002)).

Here, the operative statutory text reads: "Eligible person does not include any of the following: . . . A person whose real property taxes with respect to the dwelling . . . to be insured have been and are delinquent for 2 or more years at the time of . . . application for[] home insurance." Mich. Comp. Laws § 500.2103(2)(j). As mentioned, Peatross says that this provision does not exclude her from being an eligible person because her taxes had, at most, been delinquent for "2 or more *hours* at the time of . . . application." (ECF No. 26, PageID.871.)

But Peatross' interpretation of the statute reads "with respect to the dwelling . . . to be insured" far too narrowly. While it is true that Peatross only owned the house for a few hours before she applied for insurance, it does not necessarily follow that "her" property taxes "with respect to the dwelling" were only delinquent for a few hours, too.

Instead, when Peatross took title to the property, it was subject to the delinquent taxes and she became just as responsible for them as the seller had been. Indeed, Michigan law is quite clear that unpaid property taxes "shall become a lien on the real property. . . [and that] the lien . . . on those amounts, shall continue until

13

paid." Mich. Comp. Laws § 211.40. And "[i]t is and has always been fundamental . . . that a lien upon real estate exists for the purpose of collecting taxes levied thereon. Change of ownership does not affect it." *Jacobs v. Union Tr. Co.*, 118 N.W. 921, 922 (Mich. 1908); *see also In re Ever Krisp Food Prod. Co.*, 11 N.W.2d 852, 857 (Mich. 1943) ("The property may be distrained [or seized] although found in the hands of a subsequent bona fide purchaser. Such a purchaser, although in good faith, takes the property subject to the tax lien."); *In re Ciena Cap. LLC*, No. 08-13783, 2010 WL 3156538, at *5 (Bankr. S.D.N.Y. Aug. 10, 2010) ("In contrast, Michigan seeks to enforce tax liens against subsequent transferees and does not make provision for tax liens to attach to proceeds of the sale of the property subject to the lien."); *Workers' Comp. Agency Dir. v. MacDonald's Indus. Prod., Inc.*, 853 N.W.2d 467, 472 (Mich. Ct. App. 2014) ("Because these liens were created before Woods's appointment [as receiver] and they continued to exist when he took the property, Woods took the property subject to the liens."). These cases all suggest that delinquent taxes attach to a property, not a person. And so a buyer becomes responsible for a seller's debt.

So when title passed to Peatross, she became fully responsible for the tax liability "with respect to the dwelling." In light of this, it makes little sense to say that Peatross' taxes were only delinquent "for a few hours." In fact, even as she applied for insurance with Liberty, the county could have foreclosed on her home for delinquent taxes dating back to 2016. It follows that Peatross became a person whose real property taxes "with respect to the dwelling" had been and were delinquent for

2016, 2017, and 2018 as soon as title passed to her. *See* Mich. Comp. Laws § 500.2103(2)(j).

Regardless, Peatross makes much of the statutory language "have been and are" to say that her taxes "have [not] been" delinquent for two or more years. The Court disagrees for the reasons discussed above, i.e., that she took the property subject to those taxes and became responsible for them, just as the seller had been. In other words, once Peatross becomes the owner of the home, her property taxes are synonymous with the home's property taxes. But to clarify further, it makes sense for the legislature to include "have been and are" in the statute for reasons other than protecting *all* new buyers, as Peatross suggests. (ECF No. 26, PageID.874.) For example, a buyer who immediately pays off delinquent taxes is an eligible person because their taxes no longer "are" delinquent, even if they "have been." Alternatively, a new buyer could be an eligible person if the taxes on the home "are" delinquent, but "have [not] been" for at least two years, giving them time to bring the taxes current. It would be perfectly rational for those new buyers to be eligible while Peatross—whose taxes on the dwelling "ha[d] been and [were]" delinquent—was not.

In contrast, Peatross' interpretation would lead to strange results: both Peatross and the seller (assuming he otherwise met the criteria) would become eligible persons merely by transferring the property, despite the fact that the taxes on Peatross' property had been delinquent for three years and despite the fact that the home is subject to foreclosure. It is not clear why transferring title should absolve

all involved parties of responsibility for the property taxes as it relates to homeowner's insurance.

Resisting this conclusion, Peatross points to the statutory context. She says that the other exclusions in § 500.2103(2) focus only on categories of people—not on aspects of the property—so § 500.2103(2)(j) can similarly only apply to taxes she, personally, accumulated. (ECF No. 26, PageID.868.) While Peatross is correct that some provisions exclude categories of people (convicted arsonists, for example), others do look to the property. *See* Mich. Comp. Laws § 500.2103(2)(a)(i). For example, the statute excludes "[a] person who insures . . . a dwelling that is being used for an illegal or demonstrably hazardous purpose" and "a person who insures . . . a dwelling that has physical conditions that clearly present an extreme likelihood of a significant loss under a home insurance policy." Mich. Comp. Laws §§ 500.2103(2)(h), (k). Notably, these provisions do not exclude "a person who uses a dwelling for an illegal or demonstrably hazardous purpose" or "a person who uses a dwelling in a way that creates an extreme likelihood of significant loss," but a person who insures a "dwelling that is being used for" imprudent purposes or that "has physical conditions" that make it risky to insure. Likewise, the legislature may well have thought that properties with delinquent taxes are risky to insure—perhaps believing that such homes are more likely to fall into disrepair—regardless of who owned the property. So the statutory context does not save Peatross' claim.

Next, Peatross suggests that she is an eligible person because one of Liberty's agents said that she did nothing wrong when she purchased the home and secured

the insurance. Specifically, during his deposition, Liberty's agent testified that he, personally, was "not aware of anything 'that Peatross did wrong or sloppily or negligently with respect to the house on Santa Rosa or taxes owed with respect to that house'" before purchasing the property. (ECF No. 31, PageID.1180.) While it is not clear why Liberty's agent would be able to answer that question, there are certainly steps that Peatross could have taken to protect herself from the risk of the unpaid property taxes: she could have secured a warranty deed from the seller, purchased title insurance, or she could have done a simple search of her address on the Wayne County Treasurer's website. Such a search would have shown the delinquent taxes and revealed that the house was subject to foreclosure. (*See* ECF No. 24-6, PageID.328 (screen shot of the Treasurer's website noting that the status of the taxes on the property for 2016 and 2017 was "subject to foreclosure" and for 2018 was "delinquent").)   It is not clear why she should be permitted to bypass these protections and still avoid the consequences of the delinquent taxes. So while Peatross did not necessarily do anything wrong when she purchased the home, she certainly took a risk by not investigating the taxes while simultaneously implying to Liberty that they were current. And, unfortunately, that risk materialized.

So, in sum, the Court concludes that Peatross' interpretation of § 500.2103(2)(j) is incorrect, and that Peatross was not an "eligible person for insurance."[2] In doing

---

[2] Peatross raises several other arguments, including that the Court should not grant Liberty recission because Liberty has unclean hands, and explaining why the Sixth Circuit and many other courts in the district have misinterpreted the Act. But all these arguments depend on her interpretation of the Act. And because the Court disagrees, it need not reach these issues.

so, the Court also notes that this conclusion is consistent with both the text of the statute and existing Sixth Circuit caselaw, and that Peatross has provided no authority to support her interpretation of the Act besides her relatively novel reading of the text.

Alternatively, even if the above analysis is wrong and Peatross was an eligible person, she cannot sue to enforce the Act or to make Liberty provide her insurance. Instead, the Act provides a series of administrative remedies for a "person who has reason to believe that an insurer has improperly denied . . . her . . . home insurance." *See* Mich. Comp. Laws § 500.2113(1); *see also Clark v. Oliviera*, No. 2:15-CV-14041, 2016 WL 6834040, at *7 (E.D. Mich. Nov. 21, 2016) (explaining available procedures). And the Sixth Circuit is clear that the Act "does not create a private cause of action." *McLiechy v. Bristol W. Ins. Co.*, 474 F.3d 897, 900 (6th Cir. 2007). So a violation of the Essential Insurance Act—even assuming there was one—is not a basis to find for Peatross.

Finally, because this Court finds that Peatross is not an eligible person, she cannot prevail for yet another reason: the insurance policy permitted Liberty to rescind her coverage if she made a material misrepresentation in her application for insurance. Under Michigan law, insurance policies are treated like other contracts, and are subject to the same construction principles that apply to any other species of contract. *See Titan Ins. Co. v. Hyten*, 817 N.W.2d 562, 567 (Mich. 2012); *see also Stryker Corp. v. XL Ins. Am.*, 735 F.3d 349, 354 (6th Cir. 2012). "Where a provision is

not ambiguous, it is enforced as written unless there is a defense to enforcement." *Rory v. Cont'l Ins. Co.*, 703 N.W.2d 23, 26 (Mich. 2005).

Here, the contract clearly permitted Liberty to rescind Peatross' policy. The policy required Peatross to affirm and agree to the following statement: "I can confirm that the facts stated in my application are true . . . [and] I understand that misrepresentation of information in my application could void some or all of my coverage." (ECF No. 26-6, PageID.930.) And, as discussed, Peatross made a material misrepresentation about the delinquent status of the taxes. So Liberty was within its rights to rescind the policy. *See Hatcher v. Nationwide Prop. & Cas. Ins. Co.*, 610 F. App'x 507, 511 (6th Cir. 2015) ("She therefore misrepresented a material fact during her application, and, as such, defendant was entitled by the terms of the contract to rescind her policy."). And Peatross presents no defenses to the contract's enforcement save the provisions of the Essential Insurance Act, which, as discussed above, fail. So Liberty was entitled to rescind the policy.

## IV. Conclusion

In sum, Liberty was entitled to rescind Peatross' policy based on her material misrepresentation, relied on by Liberty, that the property taxes were not delinquent for two years or more at the time of the application. And since Liberty properly rescinded Peatross' policy, it is entitled to summary judgment on Peatross' breach of contract claim. And because the Court rejects Peatross' strained reading of the Essential Insurance Act, her motion for summary judgment is denied.

Accordingly, Peatross' motion for summary judgment (ECF. No. 26) is DENIED and Liberty's motion for summary judgment (ECF No. 24) is GRANTED. A separate judgment will follow.

SO ORDERED.

Dated: December 14, 2021

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE